UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>  Plaintiff,<br><br>vs.<br><br>GRANT ROBERTS, DR. MIGLIORI, RONA SIEGERT, JAY CHRISTENSEN, MATTHEW VALLEY, ASHLEY CANO, CHRIS JOHNSON, APRIL DAWSON, COLIN BROWN, ANTHONY BUSHNELL, JOSE CELEDON, SUSAN SAMSAM, AL RAMIREZ, DR. YOUNG, TIM McKAY, SUSAN WESSEL, ISCC,<br><br>  Defendants. | Case No. 1:19-cv-00427-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Maximiliano Sileoni, an Idaho Department of Correction (IDOC) prisoner, is proceeding on his Amended Complaint. Dkt. 58. For purposes of judicial efficiency in this pro se matter, the Court has consolidated review of all of Plaintiff's claims against all Defendants into two broad claims. The first is that, in April 2014, he underwent an umbilical hernia surgery, and the surgeon used hernia mesh in the procedure, which began to cause him chronic pain in about 2016. Plaintiff asserts that he made the Defendants aware of his ongoing and worsening pain, and they failed to provide him with corrective surgery. *See* Dkt. 58.

**MEMORANDUM DECISION AND ORDER - 1**

The second claim is that Plaintiff developed another hernia in 2016, for which Defendants refuse to provide surgical repair. Plaintiff has asserted that each Defendant was aware of, but denied, Plaintiff additional medical care to resolve his hernia issues. *See* Dkt. 58.[1]

The Court permitted Plaintiff to proceed against the individual medical defendants in their personal capacities and against Warden Jay Christensen, Plaintiff's current custodian, in both his personal capacity and in his official capacity for prospective injunctive relief.

Currently pending are Defendants' Motions for Summary Judgment, arguing that they have been responsive to Plaintiff's medical complaints and have provided adequate diagnostic care and treatment. Dkts. 81, 83. Pursuant to Federal Rule of Civil Procedure 56(e)(4), the Court required the medical Defendants to supplement their statement of facts with one or more declarations of the supervising physicians concurring with or dissenting from the diagnosis, treatment, and opinions of physician's assistant Colin Brown for the time period at issue. That supplement has been filed. *See* Dkts. 94, 94-1. Plaintiff has filed a supplemental response. Dkt. 95.

Having reviewed the entire record, the Court concludes that oral argument is unnecessary and enters the following Memorandum Decision and Order dismissing the Amended Complaint, and this entire action, with prejudice.

---

[1] In his responsive filing, Plaintiff asserts that he has or has had three hernias. That allegation is not supported by the medical record, nor is it a claim included in this lawsuit, which is ready for final adjudication.

**MEMORANDUM DECISION AND ORDER - 2**

# SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if the party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)

& (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving for summary judgment does not bear the ultimate burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

**MEMORANDUM DECISION AND ORDER - 5**

# REVIEW OF SUMMARY JUDGMENT MOTIONS: HERNIA MESH CORRECTIVE SURGERY CLAIM

Plaintiff's first claim relates to his April 2014 off-site surgery. He alleges that he underwent an umbilical hernia surgery, and the surgeon used hernia mesh in the procedure, which began to cause him chronic pain in about 2016. Plaintiff asserts that he made Defendants aware of his ongoing and worsening pain, and they failed to provide him with corrective surgery.

The record shows that, on April 28, 2014, Dr. Bren Heaton performed a laparoscopic cholecystectomy, which is a gallbladder removal surgery, because a polyp was found on Plaintiff's gallbladder in an ultrasound. Dkt. 83-4, pp. 117-119. Plaintiff was advised of the risks and benefits of a gallbladder removal surgery, including that the surgery might not relieve his pain and could possibly worsen his symptoms. *Id*. He elected to go forward.

After surgery, Dr. Heaton prepared an "Operative/Procedure Report" to provide the details of the actual gallbladder removal surgery. The report does not specify that Dr. Heaton repaired an umbilical hernia at that time. Nor does it specify that "hernia mesh" or any kind of mesh was used in the gallbladder or any other part of the surgical procedure performed on that date. The report shows that the surgeon counted the number of instruments and sponges used before and after surgery to ensure that none were left in Plaintiff's body. Dkt. 83-4, pp. 117-119.

Plaintiff has undergone numerous ultrasounds and x-rays since the 2014 surgery. None shows evidence of mesh (faulty or otherwise) from a prior umbilical hernia (or any other) surgery.

Plaintiff cannot create a genuine dispute of material fact over the written surgical report and ultrasound/x-ray results with his hearsay statement that the doctor *said* he performed a surgical procedure that is *not* listed on the very detailed Operative/Procedure Report. Accordingly, the Court finds there is no genuine dispute as to the material facts set forth in the report and the ultrasound/x-ray reports. No mesh was used in the surgery; therefore, Defendants have no responsibility to have nonexistent mesh removed or the gallbladder surgery "corrected." All Defendants are entitled to summary judgment on Claim 1.

## REVIEW OF SUMMARY JUDGMENT MOTIONS: PROPER DIAGNOSIS AND TREATMENT FOR INGUINAL HERNIA

Plaintiff's second broad claim is that he developed another hernia in 2016, for which Defendants refuse to provide surgical repair. Plaintiff has asserted that each Defendant was aware of, but denied, Plaintiff additional medical care to resolve his hernia issues.

1. **Objective Showing**

When Plaintiff continued to have abdominal and other pain after completion of his gallbladder surgery in 2014, he sought treatment from Defendants. *See* Amended Complaint, Dkt. 58; Def. Statement of Facts ¶ 2. Defendants did the following to diagnose and treat his condition:

**MEMORANDUM DECISION AND ORDER - 7**

| | |
|---|---|
| 2014 and 2015 | Plaintiff was examined by multiple medical providers, and he underwent lab work, abdominal ultrasounds, and x-rays. (SUF ¶¶ 3-4.) |
| 2015 and 2016 | Plaintiff complained of testicle pain. (SUF ¶¶ 5-6.) Antibiotics were prescribed twice, and he was diagnosed with likely epididymitis (inflammation of the tube carrying sperm in the testicles). (SUF ¶¶ 5-6.) |
| November 2016 | Plaintiff reported that the testicle pain had gone away but recently returned. (SUF ¶ 7.) After a new round of antibiotics reportedly did not resolve his subjective complaints, an ultrasound of his testicles was performed, with negative results, and he was provided with an athletic supporter. (SUF ¶¶ 7-8.) |
| December 2016 | Plaintiff reported that the pain was improved with an athletic supporter, and he declined pain medication. (SUF ¶ 8.) |
| | Plaintiff also had several mental health appointments during which he described hallucinations about hearing voices and seeing various people, spirits, and demons in his cell. (SUF ¶ 9.) |
| March 2017 | Plaintiff had several mental health appointments to address sexual deviancy issues, including exposing himself to female staff members. (SUF ¶ 9.) |
| | After continuing to complain of testicle pain despite a benign workup, Plaintiff was referred to an offsite urologist who diagnosed prostatitis but otherwise found no abnormalities. (SUF ¶¶ 10-11.) Corizon providers followed the recommendations of the offsite urologist, including putting him on a 21-day course of antibiotics. (SUF ¶ 11.) Upon completion of the antibiotics, Sileoni reported no change in symptoms. (SUF ¶ 12.) More examinations were performed, with no abnormal findings, including no findings of a hernia, and a Corizon physician further consulted the offsite urologist. (SUF ¶¶ 12-13.) A repeat ultrasound was also done, which was unremarkable. (SUF ¶¶ 13-14.) |
| Aug.-Nov. 2017 | Multiple physicians and medical providers saw Plaintiff. They reviewed the ultrasound results and performing physical examinations, yet found no objective abnormalities. (SUF ¶¶ 15-16.) Plaintiff continued to decline pain medications. Plaintiff was seen for multiple other ongoing subjective complaints of pain, including chest pain, which was attributed to anxiety and difficulty with |

| | |
|---|---|
| | coping, and for which he was prescribed medication. (SUF ¶¶ 15-16.) |
| December 2017 | Another repeat scrotal ultrasound was performed, which was generally unremarkable, except there was a question on one view only of a possible right inguinal hernia. (SUF ¶¶ 17-18.) |
| March 2018 | A physician reviewed the ultrasound results and ordered a dedicated right inguinal canal study with a few comparison views to rule out right inguinal hernia. (SUF ¶ 18.) Sileoni again declined pain medication. (SUF ¶ 18.) Additionally, he refused to be seen for the right inguinal ultrasound on May 3, 2018. (SUF ¶ 19.) |
| August 22, 2018 | A scrotal ultrasound was performed, which was unremarkable. (SUF ¶¶ 20-24.) Based on these results and the extensive benign workup, no additional workup and treatment, including surgery, was medically indicated. (SUF ¶ 24.) |
| July-Aug. 2018 | Plaintiff was also treated for obsessive compulsive tendencies that were hypersexual in nature, including for masturbating in front of female clinicians. (SUF ¶ 22.) |
| April 2019 | Plaintiff was seen for a request for penile circumcision, which was not medically indicated, and later for ongoing testicle pain. (SUF ¶¶ 25-26.) There was no bulge to the right lower abdominal wall from a hernia, and Sileoni was moving around, bending over, standing erect, and walking with no apparent distress or pain. (SUF ¶ 26.) |
| June 2019 | Plaintiff was seen again in medical unit. He had no objective abnormalities on examination, and Sileoni continued to decline pain medication. (SUF ¶ 28.) |
| July 24, 2019 | Plaintiff underwent an abdomen ultrasound, which was unremarkable, and an ultrasound of the right groin, which revealed "what appears to be herniation" that was "observed with Valsalva." (SUF ¶ 29.) There were no other cystic or solid abnormality or worrisome sonographic features seen. (SUF ¶ 29.) Sileoni was seen by physician assistant following the ultrasound, the results were explained, and Sileoni was advised to modify exercise. (SUF ¶ 30.) He again declined pain medication. (SUF ¶ 30.) Notably, the herniation was only visible with Valsalva (forceful straining), indicating that the hernia was self-reducing, meaning that the abdominal contents returned to their original compartment in their own in the absence of straining. (SUF ¶ 30.) The risks and danger |

| | outweighed the potential benefit of surgery. (SUF ¶ 30.) Conservative care, including exercise modification, was considered appropriate. (SUF ¶ 30.) There was no evidence or indication of an urgent or emergent condition, such as strangulation (cutting off blood flow to the intestine), that would require offsite specialty care or surgery. (SUF ¶ 30.) |
|---|---|
| Dec. 2019-Apr. 2020 | Plaintiff was seen for subjective complaints reportedly related to hernia and testicle pain. (SUF ¶¶ 33-36.) The providers each noted the 7/24/19 ultrasound showing right inguinal hernia (not umbilical hernia) and implemented conservative care, which included labs (urinalysis), medications, use of a hernia belt, and education regarding diet, coffee intake, and exercise. (SUF ¶¶ 33-36.) Based upon the nature of the inguinal hernia—in part because it is self-reducing or easily reducing—neither offsite care nor surgery has been medically indicated, and there has been no evidence or indication of an urgent or emergent condition. (SUF ¶¶ 33-36.) |

Plaintiff says that the hernia causes him pain at night, especially when trying to sleep. However, he has not provided any evidence to show that he is following the instructions provided to him to implement the conservative treatment plan: taking medications, wearing the hernia belt, changing his diet, reducing his coffee intake, and engaging in non-strenuous exercise. The hernia evaded diagnosis except with Valsalva (forceful straining). Plaintiff must cooperate with conservative treatment measures, including refraining from exercises that involve forceful straining, before he can claim in the future that something additional is needed.

Plaintiff argues that, as the years pass, his hernia will become worse. *See* Dkt. 86, p. 2. Defendants have diagnosed the hernia as self-reducing, have observed that there is no evidence or indication of strangulation or other emergent condition, and that the hernia

**MEMORANDUM DECISION AND ORDER - 10**

can be and has been treated with conservative care and does not necessitate surgery. Plaintiff has provided insufficient evidence to show there is a jury question regarding whether Defendants should be required to provide him with surgery.

### 2. Subjective Showing

Plaintiff has shown merely that he has had a myriad of different symptoms, but Defendants have shown in their declarations and medical records that they have rendered conscientious and varied care to address the symptoms. The Court will cite two examples of the personal care rendered to Plaintiff by two Defendants.

Between April 29, 2015, in follow up to his gall bladder surgery, and 2017, Dr. April Dawson performed all of the following tasks in response to Plaintiff's complaints: she ordered a blood panel, a chest x-ray, and an abdominal ultrasound; she had him tested for chlamydia; she prescribed Doxycycline and Minocycline to treat possible epididymitis; she prescribed APAP to treat pain; she advised him to return to the clinic if symptoms worsened or persisted; she reviewed offsite urologist records and prescribed Bactrim and Ibuprofen for Prostatitis as suggested by the urologist; she evaluated Plaintiff for constipation and discontinuation of Zyrtec, as suggested by the urologist; she examined Plaintiff's scrotum and testicles; she noted that Plaintiff's physical examination by the urologist was normal; she reviewed lab results with Plaintiff; she noted a repeat abdominal ultrasound was pending; and she reviewed Plaintiff's commissary purchases list for a six-month period to review his diet. Dkt. 83-9. There is nothing in this course of diagnosis and treatment that remotely suggests that Dr. Dawson was subjectively aware of a serious risk to Plaintiff's health and ignored it.

**MEMORANDUM DECISION AND ORDER - 11**

When Colin Brown, Physician's Assistant, saw Plaintiff between 2017 and 2018, he diagnosed and treated Plaintiff for abdominal pain, testicular pain, and complaints of a hernia; he prescribed Omeprazole for Acid Reflux to try to treat Plaintiff's non-cardiac chest pain; he noted that Plaintiff had no dysuria, no hematuria, and normal bowel movements when Plaintiff complained of abdominal pain; he noted that Plaintiff had an abdominal CT scan, a benign testicular ultrasound, and his lab results were stable; he examined Plaintiff's testicles; he noted that Plaintiff had been seen by a urologist offsite and physicians onsite—all of whom found no abnormalities in their thorough examinations; he ordered a repeat testicular ultrasound; he recommended that Plaintiff return to the clinic with any concerns; he determined that Plaintiff's chest pain was closely related to his anxiety; he noted Plaintiff had had multiple EEGs which were benign; he noted that Plaintiff reported scrotal and pelvic pain sometimes when exercising, including doing pullups and pushups, and noted the inconsistent reports of constant pain but no pain with crunches or abdominal exercises; he examined Plaintiff's abdomen (Plaintiff declined a testicular exam); he "noted that there were no concerning findings, and that Mr. Sileoni has had a significant benign workup, including CT scans, multiple ultrasounds, labs, and examinations, and that his complaints were more likely related to his behavioral and mental health problems"; he ordered additional ABL work; he had a scrotal ultrasound repeated on August 22, 2018; he checked Plaintiff for a request for circumcision, but found no objective abnormal findings and advised the risks outweighed the benefits; he saw Plaintiff for chronic testicle and abdominal pain; he evaluated Plaintiff for lung issues at Plaintiff's request; he again reviewed all of

**MEMORANDUM DECISION AND ORDER - 12**

Plaintiff's medical history; he received reports from Plaintiff that he performed all of his daily activities without interference; he received reports from Plaintiff that he was not on any pain medication and did not want to try any; he noted that "Plaintiff had received DOR's for indecent exposure of his genitals to staff members five times in the last eight months, that he masturbates in front of female staff members when they are near, and that he claims 'green men' told him to masturbate in front of female staff members"; he examined Plaintiff's abdomen and testicles; he decided to check extensive lab panel, repeat abdominal ultrasound and testicular ultrasound to include Valsalva (forceful strain); he decide to treat Plaintiff with Flomax for lower urinary tract symptoms; he again offered pain medications, but Plaintiff rejected them; he had Plaintiff undergo another abdominal ultrasound, which was normal; he had Plaintiff undergo an ultrasound of the right groin, which revealed "what appears to be herniation" that was "observed with Valsalva"; he met with Plaintiff and advised him to modify his exercise to avoid forceful strain; he considered that the ultrasound results showed that the herniation was visible only with Valsalva (forceful straining), indicating that the hernia was self-reducing, meaning that the abdominal contents returned to their original compartment in their own in the absence of straining.

In PA Brown's opinion here were no objective abnormal findings that warranted any additional or different treatment; he considered that there was no evidence or indication of an urgent or emergent condition, such as strangulation (cutting off blood flow to the intestine); he determined that the risk of strangulation for the type of herniation Plaintiff has is extremely low; he weighed the risks and danger against the

**MEMORANDUM DECISION AND ORDER - 13**

potential benefit of another surgery given the nature of the herniation and associated symptoms; and he and formed a medical judgment that conservative care, including exercise modification was an appropriate first step to treating the hernia. Dkt. 83-5, 6-7. There is nothing in this course of diagnosis and treatment that remotely suggests that PA Brown was subjectively aware of a serious risk to Plaintiff's health and ignored it.

Dr. Migliori's supplemental declaration supports the Court's conclusion that PA Brown acted within the bounds of the Eighth Amendment in the treatment provided to Plaintiff regarding his hernia complaints. *See* Dkts. 24, 94-1. Plaintiff's contention that "their problem is they just don't want to give me the surgery's do to whatever policie Corizon Health Care has" is unsupported by this record showing careful, continuous, thoughtful treatment. *See* Dkt. 95, p. 6 [verbatim].

### 3. Conclusion

During the time period in question, hernia surgery has not been not been ordered, recommended, or medically indicated" by Defendants. Dkt. 83-5. Due to the nature of Plaintiff's condition, in Defendants' medical opinion and judgment, an offsite referral was not medically indicated.

Accordingly, conservative treatment was appropriate. In summary, Plaintiff has failed to bring forward sufficient facts showing a genuine dispute of material fact as to the objective and the subjective prongs of the test. At most, he disagrees with his treatment plan. He has been given extensive treatment, just a portion of which is mentioned above. He therefore has not satisfied the objective standard by showing a serious medical need. Neither does the record show that Defendants were deliberately

**MEMORANDUM DECISION AND ORDER - 14**

indifferent to his medical conditions. There is no evidence of subjective intent—that any of the Medical Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety. *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002). Rather, his care has been quite extraordinary, with doctors checking his commissary records, ordering and reordering testing, ordering follow-up testing, considering the interplay of mental health and physical health issues, offering pain medication, and constantly carefully checking Plaintiff's health, including for things such as a request for circumcision.

He asserts that the hernia causes testicular and right upper quadrant pain. The Court also notes that Plaintiff has complained that he has been in chronic pain since 2010. *See* Dkt. 86, p. 1. Plaintiff alleges that he has been unable to engage in fitness and exercise activities as a result of his painful hernia issues. He also asserts that he has gained weight and developed heart disease, liver problems, high blood pressure, high cholesterol, and a rapid heartbeat as a result of being unable to exercise as a result of the hernia pain. He has not provided factual support that his other health problems are causally connected to his hernia.

Not all hernias require surgery. Defendants' medical records and declarations show the extensive efforts they made to diagnose and treat Plaintiff's symptoms, finally finding the hernia only upon forceful strain. Plaintiff was advised to discontinue doing exercises that require forceful strain. Plaintiff has not shown that he is foreclosed from doing other types of exercises to maintain his health. Many people have different physical

ailments that limit their ability to do certain types of exercises, and many must avoid lifting and straining, such as persons suffering from back injuries.

Plaintiff has not brought forward evidence that, during the time period in question, his hernia has changed since the ultrasound that found it, such that it is significantly larger or is not self-reducing. Plaintiff has been provided with a hernia belt that he can use when he is not under specialized housing restrictions due to his mental health issues, has been instructed on how to care for himself, and has been offered pain medication. To date, that is enough. Plaintiff has been invited to return to report worsening symptoms, and he has a history of extensive, repeated diagnostic testing that would be the envy of most people outside prison. His records indicate that he will received additional diagnostic testing, as needed, if his symptoms significantly worsen. Because the course of his medical treatment does not meet the objective or the subjective standard, summary judgment for all Defendants will be granted.

# ORDER

**IT IS ORDERED:**

1. The Corizon Defendant's Motion for Summary Judgment (Dkt. 81) is GRANTED.

2. The IDOC Defendants' Motion for Summary Judgment (Dkt. 83) is GRANTED.

3. Plaintiff's Motion to Dismiss Summary Judgment Motions (Dkt. 88) is DENIED.

4. This case is DISMISSED with prejudice.

DATED: May 4, 2021

B. Lynn Winmill
U.S. District Court Judge